## SECRET TRUST WHEREBY AN APPRAISER BECAME A PURCHASER.

Circuit Court of Cuyahoga County.

JOSEPHINE BRICKMAN ET AL v. LOUISA M. SHALE ET AL. *

Decided, March 28, 1908.

*Accounting—Action for, under a Secret Trust—Son of One of the Appraisers Purchases the Property at Executor's Sale—Co-incidents Establishing a Trust—Prohibition of Section 5404 Held Applicable—But Equities Found to be Stale.*

B served as appraiser of land which had been ordered sold to pay the debts of a decedent, and his son purchased the property at the executor's sale, assuming an existing lien and executing mortgage notes for the deferred payments. It subsequently appeared that the father withdrew from bank at the time of the sale the exact amount of the cash payment made by the son for the property, and the son thereafter disclaimed any interest in the property and reconveyed the property to his mother who had become guardian of her husband. Thirty years later, after the land had very greatly increased in value, the heirs of the decedent brought the present action for recovery of the unsold portion of the land and an accounting. *Held:*

1. That the purchase by the son amounted to a secret trust for his father, and was in fraud of the estate owning the land at the time the sale was ordered.

2. But inasmuch as the estate was hopelessly insolvent and would have received no part of the proceeds had the sale been conducted with the utmost regularity, no actual fraud was committed upon the heirs of the decedent, and the lapse of thirty years together with their knowledge, actual and constructive, of the facts, renders utterly stale the equity which the heirs now attempt to assert in the respect to technical fraud found to have been committed,

*W. B. Neff, B. Pearce* and *Frank R. Marvin,* for plaintiffs.
*M. P. Mooney,* for defendants.

HENRY, J.; WINCH, J., concurs; MARVIN, J., dissents.

This is an appeal from the judgment of the court of common

---

*See opinion immediately preceding.

pleas in an action there commenced by the heirs and legatees of Dr. Joseph T. Lammersman, who died in 1876, against Louisa M. Shale, and others, heirs of Henry Beckman, Sr., to recover such portion of a certain tract of land as still remains unsold in the hands of the defendants and for an accounting and recovery of the net proceeds of such portions of said land as have been sold by them.

The land in controversy is the same tract as the one in litigation in the case of *Ostendorf et al* v. *Shale et al*, decided by this court March 27, 1905, and affirmed by the Supreme Court, without report, in 75 O. S., 581, and the facts in the two cases are largely identical. It is therefore unnecessary now to make a complete re-statement of the matter.

Suffice it to say that the land in question was sold in 1877, under an order made by the probate court of this county in a proceeding for the sale of lands to pay the debts of Dr. Lammersman's estate. Henry Beckman, Sr., was one of the appraisers of said land in said proceeding, and Henry Beckman, Jr., his son, purchased the land at the executor's sale which ensued, paying therefor, in addition to the assumption of a subsisting lien thereon and the execution and delivery of his own mortgage notes, the sum of $1,053 in cash. It further appears that Henry Beckman, Sr., withdrew from his bank account at the time of this sale a sum of money precisely equal to the cash payment thus made. Subsequently, Henry Beckman, Jr., conveyed the same land to his mother, then the guardian of her husband, Henry Beckman, Sr., under circumstances which, as we formerly held, and now hold, clearly indicate that the son intended to disclaim any beneficial interest in the property and meant the conveyance to inure to the benefit of his father.

In the former case we reached this conclusion, without deeming it essential thereto to hold unequivocally that said purchase by Henry Beckman, Jr., was made upon a secret trust for his father in fraud of the Lammersman estate. But in the present case on the facts in evidence before us we can not avoid this conclusion. Without rehearsing all the circumstances *pro* and *con* which bear upon the question of the intention of the Beckmans,

father and son, concerning the purchase of the land, we are unable to escape the force of the coincidence above referred to in regard to the cash payment and the subsequent declarations made by the son disclaiming beneficial ownership of the land in controversy.

Having found that a trust was contemplated, we must also conclude that it was conceived and executed in flat violation of the act of March 29, 1841 (39 Ohio Laws, part 1, page 42), entitled "An act declaratory of the law in certain cases, and to prohibit the appraisers of land from purchasing the same," Section 1 whereof provided:

"No appraiser of any lot or tract of land, which shall hereafter be directed to be sold under the provisions of any law of this state, shall become the purchaser thereof, at any sale, wherein the price for which such real estate must sell, shall be governed by the valuation made by him, as one of the appraisers thereof."

We do not deem valid the contention that, because the appraisal and sale, in proceedings for the sale of land of deceased persons to pay their debts, are subject to the judicial oversight and confirmation of the court in which such proceedings may be brought, this act is rendered inapplicable in that the price for which such real estate must sell is not governed by the valuation made by the appraisers. Their relation to the sale in such cases is not essentially different from that in execution sales.

The act in question is, moreover, affirmed by the General Assembly to be declaratory of the law in such cases, and as so declared the rule is identical with that previously laid down by the Supreme Court in *Armstrong* v. *Huston's Heirs*, 8 Ohio, 552. It is true there is some difficulty on this point in the opinion of the court in *Bohart et al* v. *Atkinson,* 14 Ohio, 228, where it was held that: "In proceedings in partition, an appraiser, in the absence of fraud, prior to the act of March 29, 1841, might become a purchaser at the sheriff's sale." But the court pointed out (page 237) that in the partition sale, unlike sales by personal representatives, "The object of the proceeding was to enable several co-tenants to enjoy each his own in severalty. A sale

could not take place until each and all of the tenants in common had declined in court to take the property at its appraised value." Thus the opportunity for an appraiser fraudulently to purchase property undervalued for partition can seldom arise.

The act of March 29, 1841, after the Lammersman sale took place, was superseded in the revision of 1880 by Section 5404, Revised Statutes of Ohio, which is construed in *Hurst et al* v. *Fisher et al*, 64 Ohio State, 530, in the *per curiam*, at page 531, as follows:

"Where it appears, as in the present case, that the successful bidder at a sheriff's sale of land was one of the appraisers on whose appraisal the land was valued for sale; that the purchaser attempted to discourage other bidders at the sale and prevent them from bidding; that the land probably did not bring its real value, and that the owners (the judgment debtors) were not aware of the facts as stated until after confirmation of the sale, execution of a deed and distribution of the purchase money, a proper enforcement of the policy expressed in Section 5404, Revised Statutes, requires that the sale be set aside and the land again offered for sale, even though no guaranty is offered that the land will bring more. The remedy may prove somewhat harsh upon the purchaser, but if so, he has only himself to blame for the dilemma in which he finds himself placed."

This language, it will be observed, is of the mildest character and may be taken to imply that in the absence of actual fraud the court will not be reluctant to give intervening equities their due weight. Thus, as was held in *Terrill* v. *Auchauer*, 14 Ohio St., 80:

"A purchase of real estate at a judicial sale, by one who, at the appraisement under which such sale was made, served as an appraiser, is not, under the provisions of Section 441 of the code, strictly void, but is voidable only; and will 'be considered fraudulent and void,' only on an interposition or proceeding by a party in interest directly for the purpose of avoiding such sale."

It is true, as held in *Armstrong* v. *Huston's Heirs*, *supra*, that: "An appraiser of land at an administrator's sale, stands in such relation that his purchase, without fraud, will be set

aside at the instance of the heirs." But it was distinctly held in *Wade* v. *Pettibone*, 11 Ohio, 57, that this right "must be asserted within a reasonable time after notice of such purchase."

Here no claim is made that the Lammersman property was undervalued by Henry Beckman, Sr., and his co-appraisers. On the contrary, it is affirmatively shown that the appraisal was entirely adequate. The Lammersman estate was not actually defrauded by the Beckmans, father and son, in their subsequent purchase of the land. The fraud here relied on is constructive only and derives its sole basis and support from the provisions of the statute and the common law rule of which it is declaratory.

Moreover, the plaintiffs here were parties to the judicial proceeding which culminated in the sale in question. The record of that proceeding produced here shows that they were duly served with summons, and they are therefore conclusively chargeable with notice of each and every step, including the appraisal by Henry Beckman, the sale to Henry Beckman, Jr., and the confirmation of these acts. They may reasonably be presumed to have known also that Henry Beckman and Henry Beckman, Jr., were father and son. If there was any badge or suggestion of fraud, however slight, manifest in this coincidence of names and relationship of parties, the plaintiffs will be affected with notice of whatever further facts would have been disclosed confirmatory of such indication, had they then followed the matter up with reasonable diligence. In *Kernohan* v. *Durham et al,* 48 Ohio State, 1, it is said in the opinion of the court, by Dickman, J., at page 19:

"Whenever a party has information or knowledge of certain extraneous facts, which of themselves do not amount to nor tend to show an *actual* notice, but which are sufficient to put a reasonably prudent man upon inquiry respecting a conflicting interest, claim, or right; and the circumstances are such that the inquiry, if made and followed up with reasonable care and diligence, would lead to a discovery of the truth—to a knowledge of the interest, claim or right, which really exists; the party is absolutely charged with a constructive notice of such interest, claim or right. The presumption of knowledge is then conclusive."

Counsel for plaintiffs, in argument before us contended earnestly for the proposition that the law is or ought to be such as to preclude and make void unlawful purchases not only by appraisers, administrators, and other fiduciaries, but also by any member of their immediate families.    The inference thus urged has indeed been countenanced to same extent in *Riddle et al* v. *Roll et al*, 24 Ohio St., 572, where an administrator's sale was set aside in equity because the land was conveyed to a trustee for the use of the administrator's wife during her life with remainder to her children begotten by him, and with power in the wife to sell the land, although it was clearly shown that the wife, having ample means of her own, in fact paid for the property with no assistance from and no previous understanding with her husband.

That the relation of father and son under such circumstances, though not so close as that of husband and wife, may nevertheless be suggestive of actual fraud, has not indeed been decided by our own Supreme Court, but is distinctly intimated in sundry other jurisdictions.    *Trefts* v. *King*, 18 Pa. State, 157; *Ringgold* v. *Waggoner*, 14 Arkansas, 69.

It may be remarked parenthetically that at the time the Lammersman sale took place in 1877, there was little or no incentive on the part of his heirs and legatees to follow up a clew of this sort with any diligence whatever, for the Lammersman estate was hopelessly insolvent and the sale was, as already noted, plainly destitute of any actual fraud as distinguished from the constructive fraud which the law implies under the circumstances of this case.    The property was at that time, farm land. Thirty years later, when this suit was instituted, it had become highly valuable property in one of the best residence sections of the city of Cleveland.    Had there been in 1877 any such reward for diligence in detecting and following up irregularities in the sale as are now offered to the plaintiffs in this action, it can hardly be doubted that the coincidence of names of appraiser and purchaser would have been seized upon as a badge of fraud and a clew with which to prosecute further inquiries with as much diligence as is now mainfested.    Had such been the case the

plaintiffs should then easily have discovered that Henry Beckman, Jr., was a young man living with his father and without means of his own. They should have discovered by interrogatories, or otherwise, where Henry Beckman, Sr., kept his bank account, and they would have ascertained that he withdrew the sum of $1,053 therefrom on the very day that his son paid the $1,053 for the property in question. In other words, they would then have uncovered the secret trust which we now find existed at the time, but which for lack of incentive they did not seek out nor discover until the litigation in the Beckman family in the case of *Ostendorf et al* v. *Shale et al, supra,* disclosed to the world the skeleton in the closet.

Thus, after the lapse of thirty years, when the Beckmans, father and son, are both dead, when the property in question is vastly increased in value, when a large part of the property has been sold off, when the Beckman heirs have conformed their lives to a state of the family fortune which they had no more reason to suspect was tainted than had the plaintiffs in this case, we are asked upon our consciences as a court of equity to transfer this property upon a mere technicality to those from whom no value was ever taken, and who, had the sale in 1877 been conducted with the utmost regularity, would never have enjoyed any portion of that which they now claim.

To a majority of the court this seems so utterly repugnant to equity and good conscience that we can not accede to it. A lapse of thirty years, after constructive knowledge to the plaintiffs of such merely technical fraud as that here complained of, renders their equity utterly stale.

In *Webster et al* v. *Bible Society,* 50 Ohio State, 1, the opinion of the court by Williams, J., at page 18, cites with approval *Baker* v. *Read,* 18 Beavan, 398, wherein "a bill, after seventeen years, to set aside a purchase of the testator's estate by his executor, at an undervalue, was dismissed on the ground of delay, although the court was clear that the sale, if recent, should be set aside." And the entire opinion may be studied with profit upon the question whether the lapse of so long a period should not take from any appeal to equity, under such circumstances

as here appear, much, if not all of its original persuasiveness. See, also, 5 Pomeroy's Equity Jurisprudence, Section 23, el seq., and many authorities there cited.

Slight circumstances may well be seized upon in such cases to affect the plaintiffs with constructive notice and consequent laches or acquiescence, and the circumstances which manifestly challenged investigation of this sale at the time it took place, were to our mind, by no means slight. The plaintiffs must be held to have acquiesced in this sale, which, though they had the means of knowing that it was irregular, they forbore to challenge, because they had no substantial motive at that time for endeavoring to overturn it.

The petition is dismissed.