DEREUISSEAUX v. BELL.

5-3229                                    378 S. W. 2d 208

Opinion delivered May 4, 1964.

*Kenneth Coffelt,* for appellant.

*Gordon & Gordon, Felver A. Rowell, Jr.,* for appellee.

GEORGE ROSE SMITH, J. Under the authority of Ark. Stat. Ann. § 62-2402 (Supp. 1963) the appellee, as administrator of the estate of Sam Bell, deceased, brought this suit to set aside certain assertedly fraudulent conveyances made by Sam Bell during the last year of his life. The chancellor, in accordance with an excellent memorandum opinion that he prepared, entered a decree granting the relief sought. For reversal the appellants, who were the immediate and ultimate recipients of the property conveyed, contend principally that there was no proof of actual fraud on the part of the parties to the various conveyances.

On November 16, 1961, Sam Bell, the decedent, shot and wounded his nephew, William Robert Bell. In February of 1962 Sam pleaded guilty to a charge of assault with intent to kill and was sentenced to fifteen years imprisonment. Sam was then suffering from a fatal disease and died in the penitentiary on November 28, 1962.

At the time of the shooting Sam Bell owned real and personal property worth about $25,000. In a series of transfers made during the first half of 1962 Sam Bell gave all his property (except a truck given to a nephew) to the appellant Leila Dereuisseaux, his favorite niece. In January, 1963, Mrs. Dereuisseaux, after having used part of the property to pay funeral expenses and other proper charges against the Bell estate, in turn gave the rest of the property to her daughter, the appellant Billie Jean Dereuisseaux. Billie Jean then delivered $12,000

in cash to her attorney, the appellant Kenneth Coffelt. This was her contribution under a contract by which she and Coffelt agreed to build and operate a motel. Coffelt had represented Sam Bell and Mrs. Dereuisseaux from the beginning. There is no question about his having been fully aware of the source of the funds paid to him by Billie Jean.

In May of 1962 William Robert Bell filed an action against Sam Bell for $121,000 as damages resulting from the shooting. After Sam's death that case was revived in the name of his administrator, the appellee. The present suit was filed by the administrator in February of 1963, the complaint alleging that the conveyances were executed with the fraudulent intention of placing Sam Bell's property beyond the reach of his creditor, William Robert Bell.

It is first contended that William Robert Bell was not a creditor of Sam Bell or of his estate and that therefore the conveyances cannot be regarded as fraudulent with respect to his cause of action. This contention has been rejected in a number of cases, including *Papan v. Nahay,* 106 Ark. 230, 152 S. W. 107, and *Horstmann v. LaFargue,* 140 Ark. 558, 215 S. W. 729. Those cases hold that one having a cause of action in tort is a creditor with a right to question a fraudulent conveyance. In the *Horstmann* case we recognized the fact that such a claimant becomes a creditor "upon receiving his injury." Hence William Robert Bell was an existing creditor when the challenged conveyances were made; so we need not discuss a number of cases, cited by the appellants, that were concerned with subsequent creditors.

It was stipulated at the beginning of the trial that "Sam Bell gave all of his property, both real and personal, except the truck, to Leila Dereuisseaux." Mrs. Dereuisseaux and others gave testimony indicating that Bell was motivated not by any desire to defraud William Robert Bell but by the wish to provide for this niece, for whom he had great affection. It is argued that in view of this proof the appellee failed to prove such ac-

tual fraud as would justify the chancellor in setting aside the gifts.

This argument is unsound, for there is no requirement that conscious fraud be shown. We have repeatedly held that conveyances by an embarrassed debtor to his near relatives are presumptively fraudulent, and when the debtor's condition proceeds, as here, to the point of insolvency such conveyances are, with respect to existing creditors, *conclusively* presumed to be fraudulent. *Wilks* v. *Vaughan,* 73 Ark. 174, 83 S. W. 913; *Kaufman* v. *Citizens' Bank,* 189 Ark. 113, 70 S. W. 2d 572; *Connelly* v. *Thomas,* 234 Ark. 1024, 356 S. W. 2d 430. Since the presumption of fraud is conclusive it cannot be rebutted by proof that there was actually no intentional wrongdoing. There is no basis for any intimation of fraud on the part of Billy Jean Dereuisseaux or Mr. Coffelt, but since they took the property with knowledge of Bell's gratuitous transfers to Mrs. Dereuisseaux they cannot be considered to be innocent purchasers. *Ringgold* v. *Waggoner,* 14 Ark. 69.

There is some suggestion in the appellants' brief that the appellee is not in a position to attack the conveyance of one piece of real property, because it was Sam Bell's homestead. This contention was not raised in the appellants' pleadings nor, as far as we can discover, in any other manner in the trial court. There are a few casual statements indicating that Bell lived near Lake Conway, but there is no direct proof enabling us to say with confidence that the property was his homestead. This point is raised for the first time on appeal and therefore cannot be considered.

A final argument is that the appellee delayed so long in bringing this suit as to be guilty of laches. The record does not support this contention. Bell's conveyances to Mrs. Dereuisseaux began in January, 1962, and ended in May of that year. Mrs. Dereuisseaux gave the property to her daughter in January, 1963. This suit was filed in February, 1963. We are of the opinion that the administrator acted with diligence in the matter. More-

over, even if the delay were considered to be prolonged, it does not appear that the rights of the appellants were prejudiced in any way.

In setting aside the transfers the chancellor directed that the funds and other property be retained in the control of the court until William Robert Bell's personal injury action is finally decided. This procedure was proper. If there should ultimately be any assets in the estate not needed to satisfy the tort claim it will be necessary for the court to determine the proper distribution of the surplus.

Affirmed.

ROBINSON, J., not participating.