John M. FARR *v.* Jackye R. FARR

CA 07-369

276 S.W.3d 734

Court of Appeals of Arkansas
Opinion delivered February 20, 2008

*Orvin W. Foster*, for appellant.

*J. David Maddox*, for appellee.

JOSEPHINE LINKER HART, Judge. John M. Farr, Jr., appeals from an order of the Polk County Circuit Court denying his motion to set aside an order on the mandate and granting Jackye R. Farr's petition to find him in contempt. On appeal, he argues that both of these rulings were error. We affirm the denial of his motion to set aside the order on the mandate, and we reverse and dismiss the contempt finding.

On January 19, 2005, this court remanded the property division in the parties' divorce, holding that the trial court erred in failing to divide as a marital asset a $92,000 "receivable" that was engendered by a loan of marital funds to John's sons from a

previous marriage. The $92,000 was a debt that remained from the sons' failed business venture, and the trial court had concluded the debt was uncollectible.

On November 30, 2005, the trial court entered an order styled "Order on Mandate" that purported to divide the marital property in accordance with our January 19, 2005 opinion. The order, however, not only evenly divided the $92,000 receivable between the parties, but also ordered that Jackye would receive her portion directly from the proceeds of the sale of the marital residence. John did not challenge the order until September 1, 2006, when he petitioned to set the order aside. Jackye answered the petition and moved to dismiss, asserting that the trial court had lost jurisdiction to modify or set aside the order because more than ninety days had elapsed since its entry. By order entered January 9, 2007, the circuit court denied John's petition. It specifically found that John "was represented by counsel at the time of the entry of the order, and was aware that the order was entered and when it was entered and had actual knowledge of the order." The trial court also found that John "did not request a hearing concerning the order prior to its entry, nor properly object to same being entered, nor take an appeal from the entry."

Meanwhile, the marital residence went to a Commissioner's sale on August 2, 2006. The notice of the sale specified that the home was to be sold on three months' credit with a ten-percent bond. John made the high bid of $231,000. On August 30, 2006, he requested the trial court to confirm the sale. John was given fifteen days to tender the purchase price and Jackye, who had been occupying the marital residence, was given fifteen days to vacate.

John failed to complete the sale and Jackye petitioned to have him found in contempt. The grounds asserted in Jackye's petition were that John had failed to complete the purchase of the marital residence and that he had made duplicate keys to the home and other buildings on the property and placed furniture in the residence "without the knowledge and consent of the Clerk of the Court." In the same order in which the trial court denied John's petition to set aside the order on the mandate, the trial court found John in contempt. The trial court adopted Jackye's allegations regarding making the keys, moving personal property into the residence, and failing to close on the property within the time frame specified as the basis for finding John in contempt. It awarded Jackye $1,000 in damages for having to move from the residence and $2,933.33 in attorney's fees.

■ On appeal, John first argues that the trial court erred in entering its order on the mandate because it deviated from the directions that we gave it in our opinion and failed to resolve disputed questions of fact and law. We note, however, that John's petition to vacate was filed approximately nine months after the entry of the order. This time is well beyond the ten days that Rule 59 of the Arkansas Rules of Civil Procedure allows for requesting a new trial and the ninety days specified under Rule 60(a) of the Arkansas Rules of Civil Procedure during which a trial court may modify or vacate a judgment to "correct errors or mistakes or to prevent miscarriage of justice." While there are exceptions to the ninety-day limitation specified in Rule 60(c), John does not argue, nor do we find, that any of the enumerated grounds in that subsection apply. It is settled law that a trial court loses jurisdiction to modify a judgment or order after ninety days. *Jordan v. Circuit Court of Lee County*, 366 Ark. 326, 235 S.W.3d 487 (2006). Accordingly, we hold that the trial court did not err in refusing to set aside its order because it lacked the jurisdiction to modify or vacate the order.

John next argues that the trial court erred in finding him in contempt and awarding Jackye damages and attorney's fees. He asserts that no specific order was produced prohibiting him from engaging in the alleged contemptuous conduct and there was no evidence presented at the hearing that established willful disobedience of any valid order of the court. We agree.

We note first that because the finding of contempt appears to be directed at vindicating the dignity of the court and punishing disobedience to its orders rather than compelling compliance with an order, the sanctions imposed in this case were criminal in nature. *See Omni Holding & Dev. Corp. v. 3D.S.A., Inc.*, 356 Ark. 440, 156 S.W.3d 228 (2004). When we review a case of criminal contempt, we view the record in a light most favorable to the trial judge's decision and will sustain the decision if supported by substantial evidence. *Hodges v. Gray*, 321 Ark. 7, 11, 901 S.W.2d 1, 3 (1995). However, before one can be held in contempt for violating a court order, the order must be definite in its terms and clear as to what duties it imposes. *Conlee v. Conlee*, 370 Ark. 89, 257 S.W.3d 543 (2007).

■ Here, by defaulting on the purchase of the marital residence, John did not violate an order of the court, but merely failed to fulfill a sales contract. While it is true that Jackye testified

at the contempt hearing that he outbid her for the residence, we find this fact to be of no moment. The trial court never prohibited John from bidding on the residence, and when he did so, his actions were not those of a party to this action, but that of any member of the public at large who chose to enter a bid. We note further that his bid was secured by a ten-percent bond which John — or any other high bidder — would stand to forfeit if he or she failed to complete the sale. We acknowledge that the power to punish for contempt is inherent in the courts, but that power should only be exercised when it is necessary to insure that the authority of the court is continued. *Nutt v. Delta Trust & Bank*, 79 Ark. App. 257, 85 S.W.3d 927 (2002). John's conduct in this regard was covered by a contractual remedy and was therefore outside the scope of the trial court's contempt power.

Regarding the other asserted grounds for finding John in contempt, we have scanned the record, and we found no order that prohibited John from making duplicate keys or placing furnishings in the erstwhile marital residence. Indeed, Jackye's petition merely alleged that this conduct was contemptuous because it was undertaken "without the knowledge and consent of the Clerk of this Court" or her. Before a person may be held in contempt for violation of a judge's order, the order alleged to be violated must be definite in its terms as to the duties imposed and the command must be express rather than implied. *Sims v. First State Bank of Plainview*, 73 Ark. App. 325, 43 S.W.3d 175 (2001). Because there was not an express court order prohibiting such conduct, we hold that it was error for the trial court to find John in contempt.

Finally, Jackye asserted that John caused her to have to leave the marital residence. Her departure from the marital residence was occasioned by the Commissioner's sale, however, not by any contemptuous conduct on John's part. We therefore reverse and dismiss the contempt finding and vacate the judgment for damages and attorney's fees.

Affirmed in part; reversed and dismissed in part.

PITTMAN, C.J., ROBBINS, and BIRD, JJ., agree.

GRIFFEN and GLADWIN, JJ., dissent.

WENDELL L. GRIFFEN, Judge, dissenting. Although I agree that the circuit court properly refused to set aside the

order on mandate due to appellant's failure to comply with Rule 60 of the Arkansas Rules of Civil Procedure, I would hold that the contempt finding in this case was supported by substantial evidence. The majority opinion asserts that this is a simple case of a party who "merely failed to fulfill a sales contract." However, appellant's behavior goes much deeper. For these reasons, I respectfully dissent.

While the majority opinion properly states the procedural background of this case, it omits the evidence presented at the hearing on the contempt petition. At that hearing, appellant acknowledged that he offered to pay $231,000 for the marital residence, but that he was unable to complete the transaction because no bank would lend him the bond money. He stated that he bid that amount thinking that he was going to pay half, as he already owned half the home. Appellant also noted that the house was not insured and that, when he paid an insurance premium, he was told that the home had to be occupied before insurance coverage would apply. He testified that he tried to comply by placing his belongings inside the house; however, he was told by the clerk of the court that he was in the home illegally. On cross-examination, he acknowledged that he had purchased five houses since moving away from the marital residence.

Appellee testified that it cost her $1600 to construct a storage building and that she could move the building for $250 to $300. She claimed $600 in damages for having to move out of the marital residence plus construction of the storage building. She also noted that she was at the auction of the marital residence and that she submitted a bid of $230,000, thinking that the bid represented the value of the home.

At the conclusion of the hearing, the circuit court noted as follows:

> Now, the other one is, on your motion for contempt. I don't know how many calls I got from the clerk's office and I just don't know, the poor circuit clerk here is just — I'm surprised she's got any hair left on her head because every time I visited her, she was pulling it out. And, that was caused by you, Mr. Farr. Ms. Farr bid it up to $230,000 and you bid her one more and you said you would proceed on it. Now, I required you to put up at least the amount of the bond of one-half plus half the debt, did I now, isn't that correct?

. . . .

And, the fact that the testimony has been from Mr. Farr today is that he's — he's bought a new house in Fort Smith, I believe he said he paid $120,000 for that one. He's getting ready to buy one in Oklahoma for $80,000. He bought another one for $162,000, so, the fact that he indicates he can't proceed with the sale or put up a bond doesn't carry much water in my opinion. . . . It looks like to me he's doing quite well. So, I don't find that's a viable argument that he couldn't follow through on the sale or put up whatever bond he needed to put up. I believe that Mr. Farr is trying to pull a little bit of wool over the Court's eyes. And, even though he bid on the property, he had keys made. There's a dispute in the facts as to whether or not the locks were drilled or whatever, but the truth of the matter is and I think it's pretty well uncontroverted is that he went out there and tried to move stuff in before he had authorization to do so, he had a key made in direct defiance of the order of the Clerk and then attempted to move stuff and so forth in and out and as far as I'm concerned, you're in contempt for those particular reasons.

Now, here's what I'm concerned about. If this were a third party . . . who'd bid on this property and put up $23,000 and that party didn't follow through on the sale, I've always understood that that was earnest money and earnest money like any other real estate deal would be — that's the value or that's the damage that you have incurred and the right to keep that money because you have taken that property off the market during that period of time because you failed, the proposed buyer, failed to follow through and close the transaction and as a result, then that money should be forfeited. That's what I would say on any real estate deal is the way I understand it. I'm going to give you a chance to tell me I'm right or wrong on this issue, but it looks like to me the money ought to be forfeited and that's what I'm thinking. I'm not ordering it, I'm going to give you a chance if you can find me some legal — case law that says I shouldn't do it that way, then I'll be glad to refund the money to Mr. Farr. I don't think that's right and I think he's playing games with the Court and Ms. Farr. I think he's played games with Ms. Farr and that the Court's been drawn in as part of it and the clerk. Those are the two things I don't care for. What you two do to each other is fine, but when you get in front of the Court, then you're going to have to take responsibility for it.

So, here's what I'm going to do. First of all, I don't agree with all of Ms. Farr's request for damages. You built your storage building and I believe from Mr. Foster, he indicated that the most you

could have would have probably been $1,000 in expenses for moving and you were going to have to move anyway, so I don't have a whole lot of part in that argument because you were going to have to move anyway at some point, you might not have if you'd have been the successful bidder and Mr. Farr hadn't have bumped you up, so I'm going to award you $1,000 on your moving expenses or damages for what — I shouldn't say moving expenses because I don't think that's correct. But damages occurred as a result of your actions, Mr. Farr, in doing all this and bidding it up and then not following through on it and going out there and causing the problems.

Now, on the attorneys fees, Mr. Maddox, you can submit your time sheet from the time of the report of the sale through today. Whatever those are, I'll grant you attorneys fees on that.

Disobedience of any valid order of a court having jurisdiction to enter it may constitute contempt, punishment for which is an inherent power of the court. *Aswell v. Aswell*, 88 Ark. App. 115, 195 S.W.3d 365 (2004). An act is deemed contemptuous if it interferes with the order of the court's business or proceedings or reflects upon the court's integrity. *Ward v. Switzer*, 73 Ark. App. 81, 40 S.W.3d 325 (2001). Before a person may be held in contempt for violating a judge's order, the order alleged to be violated must be definite in its terms as to duties imposed, and the command must be express rather than implied. *Johnson v. Johnson*, 343 Ark. 186, 33 S.W.3d 492 (2000).

While the majority opinion states that appellant was held in contempt for failing to close on the sale of the marital residence, the issue here is much deeper. The contemptuous behavior includes the act of increasing the bids on the property to prevent appellee from obtaining the home, then failing to follow through with the purchase despite the ability to do so (as evidenced by the purchase of other residences in that same time period). These actions frustrated the purpose of resolving the property issues in this arduous divorce.[1]

Further, the majority notes that appellant stood to forfeit his bond for his failure to complete the sale of the home. It so states

---

[1] According to documents in the record, another auction was held on January 25, 2007, and the marital residence was ultimately sold to a third party for $217,000, $14,000 less than appellant's "successful" bid. Appellant's behavior deprived the marital estate of that money, half of which would have been presumably awarded to appellee.

without any citation to authority and despite the circuit court's reluctance to automatically forfeit the bond at the conclusion of the contempt hearing. Appellant certainly did not believe that his bond payment was subject to forfeiture, as he filed a request to have his bond money refunded. If the circuit court were to grant his remedy, it would leave appellee without a remedy.

The majority sees this case as a simple failure to follow through with the sale of a residence, but the issues go much further than that. Because I would hold that the circuit court did not err in finding appellant in contempt, I dissent.

I am authorized to state that Judge Gladwin joins in this dissent.