C.R.T., INC. *v.* Gordon BROWN et al

80-57                                602 S.W. 2d 409

Supreme Court of Arkansas
Substitute Opinion on Rehearing
delivered July 7, 1980

*Wright, Lindsey & Jennings* and *Friday, Eldredge & Clark*, for appellant.

*Philip E. Dixon* and *Charles R. Nestrud*, of *House, Holmes & Jewell*, for appellees.

DARRELL HICKMAN, Justice. C.R.T. Inc., the appellant, licensed to haul asphalt and asphalt products, steam cleaned its trucks at a terminal in Pulaski County. The run-off from the steam cleaning necessitated some kind of lagoon to prevent pollution. C.R.T. constructed a holding pond to contain the waste. It was eight feet deep and measured about 120 feet by 200 feet. Drain pipes were placed in the holding pond and only water was supposed to run off, leaving the residue in the tank to be periodically removed. The pond was not the kind of facility recommended by C.R.T.'s engineers. The facility recommended by its engineers was estimated to cost between $40,000 and $60,000, which C.R.T. decided was too expensive.

In December, 1977, Gordon Brown, a landowner of adjacent property to C.R.T.'s facility, and the lessees of his land, Harold Thomas and Rickey Thomas, filed suit in the Chancery Court of Pulaski County. They asked that C.R.T. be permanently enjoined from discharging any petroleum waste onto the Brown property. The Thomases used the Brown property as a pasture for a small herd of cattle. The chancellor entered a permanent injunction and the parties entered into a settlement for damages that had occurred to

the land and to the small herd of cattle. The settlement figure was $9,000.00.

In July, 1978, Brown and the Thomases filed another petition in chancery court asking that C.R.T. be held in contempt of court for pollution that had occurred to the land in 1978. Brown asked for damages to his land and the Thomases asked for damages to their cattle. The Department of Pollution Control and Ecology joined in the suit.

The chancellor found C.R.T. in contempt of court and awarded Brown, the property owner, $27,000.00 in damages; Rickey Thomas was awarded a total of $5,580.00 for damages to his cattle; the appellees were also awarded $8,500.00 as attorneys' fees and costs of $1,325.41. The chancellor specifically found that since Brown had not used any of his portion of the $9,000.00 settlement obtained in 1977 to restore the land, his damages were reduced by $4,000.00. In other words, the chancellor found that Brown's damages totalled $31,000.00 — but were reduced to $27,000.00.

C.R.T. concedes that the chancellor was right in finding that "Oil and asphaltic materials flowed from [C.R.T.'s] pond onto [Brown's] property in June of 1978 and again in September, 1978." However, C.R.T. argues that the damages were excessive and the attorneys' fees and costs were improperly awarded.

We must first emphasize that this was a contempt proceeding and that C.R.T. was found in contempt of court. There was an abundance of evidence to support the chancellor's finding that C.R.T. had failed on at least two occasions in 1978 to prevent pollution and that, in fact, asphaltic material had overflowed from the pond, running into a small stream that traversed the Brown property and damaging Brown's land.

Two witnesses testified regarding the damage to the land. Appellant's witness testified that he could clean up Brown's property by scraping the ground and replacing the topsoil. His estimate was that the cost would be between $10,000 and $12,000. He conceded, however, numerous small trees would have to be removed.

The appellees' witness, John Allen, Jr., an employee of Ergon, Inc. which provides an environmental cleanup service, estimated that it would cost $32,887.00, plus taxes, to clean up the property. Ergon is a Memphis, Tennessee corporation and in its estimate labor alone would amount to $17,000.00. Ergon proposed that this cleanup would have to be done with shovels and buckets to insure that the property was restored to its prior state.

The appellant argues that Ergon's estimate, which was no doubt used as a basis of the award by the chancellor, was totally unreasonable. We disagree.

We find that the chancellor properly considered the special damages in this case to be a sum that it would take to restore the property to its former state. *Earl* v. *Clark*, 219 N.W. 2d 487 (1974). See also *Ross* v. *St. Louis I.M. & S. Ry. Co.*, 120 Ark. 264, 179 S.W. 353 (1915). While the estimate of Ergon to restore the land was considerable, it was the only evidence of what it would take to restore the land to its former condition. The fact that it would be expensive to restore the land to its former condition is not reason alone to overrule the chancellor's finding. There was no other evidence of what amount of money it would take to repair the damage and at the same time preserve the land as it was.

C.R.T., a corporation found in contempt of court, causing an unusual damage to Brown's property, would ask that damages only be awarded that would restore Brown's property as C.R.T. would like it restored. Our review on appeal is limited to examining the finding of the chancellor and only overruling it if it is against the preponderance of the evidence. *Fisher* v. *Fsiher*, 237 Ark. 321, 372 S.W. 2d 612 (1963).

Since this was a civil contempt proceeding we find it entirely appropriate that the chancellor awarded attorneys' fees and costs. The award of attorney's fees in civil contempt action has been approved by the United States Supreme Court. *Fleischmann Distilling Corp.* v. *Maier Brewing Co.*, 386 U.S. 714 (1967). The attorneys' fees were based on the number of hours the appellees' attorneys said they worked and we cannot say the chancellor was clearly wrong in the award. The same is true for the costs. The costs included cost of a deposition and the fee for an expert witness. Essentially, the costs were those to the appellees for trying the lawsuit. We find

nothing inordinately unfair about such an award in a contempt case. A party should not be penalized for having to prove that a person or corporation is in contempt of court. Indeed, the converse is true.

The damages awarded to the Thomases were for loss of cattle and damage to the cattle. The first figure for damages was $3,900.00 because of the death of six cattle. The chancellor found five died as a result of an overflow which washed oil and asphalt into the creek in June, 1978. The cattle used the stream for drinking water. One cow was found to have died as a result of an overflow that occurred in September, 1978. A veterinarian testified that in his opinion the cause of death was the result of the intake of the asphaltic materials. The appellant questions the worth of his opinion. Questions raised regarding the expert's testimony go to the weight or credibility of his testimony and any argument regarding the weight of that opinion was a matter to be decided by the chancellor. *Apple* v. *Cooper*, 263 Ark. 467, 565 S.W. 2d 436 (1978). We cannot say the chancellor's finding regarding the death of the cattle was against the preponderance of the evidence and, therefore, we do not disturb it. *Kemp* v. *Simmons*, 244 Ark. 1052, 428 S.W. 2d 59 (1968).

The chancellor found that weight loss suffered by 14 cattle resulted in damages to the appellees in the amount of $1,-680.00. The cattle were estimated to have lost about 150 pounds each and cattle at that time were selling for about 75 to 80 cents a pound. This evidence supports the chancellor's finding and we cannot say he was clearly wrong in this regard.

The appellees argue on cross-appeal that Rickey Thomas should have been awarded damages because his cows did not calve as they would have except for the pollution. The chancellor made a finding to the contrary and we cannot say his finding is clearly against the evidence. No punitive damages were awarded, the chancellor finding that the appellees had wavied any right to punitive damages by filing the suit in a court of equity. In making his decision the chancellor apparently relied on the case of *Stolz* v. *Franklin*, 258 Ark. 999, 531 S.W. 2d 1 (1975). The appellees, on cross-appeal, argue that punitive damages should have been awarded and that the chancellor could have considered

damages under the clean-up doctrine. We find it unnecessary to discuss this since we review a case de novo and in our judgment the damages awarded in this case were sufficient not only to compensate the appellees but to punish the appellant for its wrongful act.

Affirmed.