IN THE MATTER OF George Alexander BROWN *v.*
B.G. BROWN

90-226                                              809 S.W.2d 808

Supreme Court of Arkansas
Opinion delivered May 20, 1991

*Basil V. Hicks, Jr.,* for appellant.

*Hopkins Law Firm,* by: *Gregory M. Hopkins*; and *Richard C. Downing, P.A.,* by: *Patrick C. Downing,* for appellee.

TOM GLAZE, Justice. Appellant appeals the lower court's August 14, 1990 and October 2, 1990 orders finding him in civil contempt for willfully failing to comply with an April 27, 1989 divorce decree, incorporating a property settlement agreement which required him to pay appellee, his former wife, $50,000.

Appellant's sole argument is that no credible evidence exists to support the trial court's finding that he had the ability to pay the $50,000; thus his incarceration is an imprisonment for debt in violation of art. 2, § 6 of the Arkansas Constitution.[1]

■ Our review of a finding of contempt is limited to examining the findings of the trial court and reversing only if the trial court's decision is against the preponderance of the evidence. See Ex Parte Johnston, 221 Ark. 77, 251 S.W.2d 1012 (1952). In arguing he had no ability to pay his obligation to his former wife, appellant relies heavily on the fact that, prior to his divorce, he had filed a voluntary Chapter 11 bankruptcy proceeding. He stated that a bankruptcy trustee had control of his estate and that little of his property has been liquidated. Appellant further states he lives with his mother, he is unsalaried, he has received only $4,000 from the trustee and he has assigned to his former wife the proceeds of his estate that might remain after his creditors are paid.

Appellee countered appellant's evidence by detailing appellant's assets and liabilities existing before and at the time he filed for bankruptcy. In 1986, he had a net worth of over two million dollars, in 1987, his net worth was over one and one-half million dollars, and on May 8, 1988, when he filed his petition for bankruptcy, he was worth $314,000. While appellant's net worth appeared to decrease during this period, the appellee introduced the bankruptcy judge's earlier findings that the appellant failed to disclose all of his assets and income. Specifically, the bankruptcy judge found appellant did not reveal what his partnership arrangement was with his mother. Because appellant demonstrated a total lack of good faith in disclosing his financial interests, the bankruptcy judge appointed a trustee to administer appellant's estate. Even after his appointment, the trustee testified later in this contempt action that, while appellant's mother denied any business relationship with her son, the trustee was

---

[1] We note that appellee argues this appeal is moot because appellant was released, temporarily at least, from jail on January 31, 1991. Appellant, however, limits his appeal from the August 14 and October 2, 1990 contempt orders and seeks the overturn of those orders. What has occurred in this case since appellant's appeal of those two orders is unclear and does not bear on the validity of these final orders. Therefore, we opted to address the merits of appellant's appeal.

unable to separate appellant from his mother's farming operation.

Appellee further showed that the appellant never tendered a Chapter 11 plan to the trustee, requesting his estate be liquidated accordingly. The trustee also stated the appellant made no efforts to sell any of his real property. Appellant conceded that, when he borrowed money, he had told banks that the property in his mother's name was actually his inheritance property, which he then used as collateral for bank loans.

Based upon the above and other evidence, the chancellor, in finding appellant had the ability to pay his obligation to appellee, resolved the conflicts in testimony in appellee's favor. Additionally, he found evidence that the appellant had received some money during his bankruptcy, but had never given any of it to the appellee. The chancellor was convinced that appellant had an ongoing business relationship with his mother that could have, if disclosed, produced sufficient funds to pay his obligation to appellee. In sum, neither the bankruptcy judge nor, in this action, the chancellor, believed the appellant's story that he had insufficient funds or resources to pay his debts. Clearly, the trial judge determined that any inability the appellant had in paying the appellee was due to appellant's own actions or inactions. While inability to perform is a defense to contempt citations, we have held that where the inability to pay is due to actions or inactions on the appellant's own part, a finding of contempt is proper. *Ex Parte Coffelt*, 239 Ark. 324, 389 S.W.2d 234 (1965).

When there are conflicts in the testimony, it is our duty to give the same force to the findings of the trial court in contempt proceedings as we do in other cases when there is a conflict in testimony. *Dennison v. Mobley, Chancellor*, 257 Ark. 216, 515 S.W.2d 215 (1974). In following this rule when reviewing the record before us, we are unable to say the trial court's finding of contempt is clearly against the preponderance of the evidence.

For the reasons stated above, we affirm the trial court's civil contempt orders.

HOLT, C.J., not participating.