Sheryll Denise ASWELL  *v.*  Mickey Lane ASWELL

CA 03-1428                                          195 S.W.3d 365

Court of Appeals of Arkansas
Opinion delivered October 13, 2004

116

*Boyer, Schrantz, Rhoads & Teague, P.A.*, by: *Johnnie Emberton Rhoads*, for appellant.

*Clark & Spence*, by: *George R. Spence*, for appellee.

JOHN B. ROBBINS, Judge. Appellant Sheryll Denise Aswell appeals the order of the Benton County Circuit Court that granted appellee Mickey Lane Aswell's petition to hold her in contempt for failure to reimburse him for one-half of the college expenses incurred for their son, Chalin, and that granted attorney's fees to appellee. We reverse and dismiss.

The parties divorced in January 1991. Appellant was awarded custody of the parties' children, and appellee was ordered to pay child support. In the order settling all of their domestic

issues, which was approved by the trial court granting the divorce, the parties agreed to the following provision:

> Husband shall pay half of the children's college tuition and expenses, and Wife shall pay the other half of children's college tuition and expenses.

By the summer of 2002, two of their three children had reached the age of majority. The oldest child, Myia, did not attend college. However, the middle child, Chalin, chose to attend Davidson College, beginning in the fall of 2002. On May 12, 2003, after Chalin had completed his first year, appellee filed a petition seeking to hold appellant in contempt for her failure to reimburse him for her half of Chalin's college expenses. Appellee did not disclose the amount he was demanding of appellant, $3,991.22, until May 25, 2003.

In her response to the petition, appellant asserted that it was inequitable for her to have to pay these expenses because she was financially unable to do so. The response further asserted that her inability to pay was complicated by (1) the special needs of the parties' youngest and oldest children, both of whom she raised single handedly, (2) her own physical limitations, and (3) appellee choosing an expensive private college for their son instead of a less expensive in-state college or university.

At the August 18, 2003, hearing, appellant acknowledged that she voluntarily agreed to the paragraph dividing college expenses and was represented by counsel at the time they divorced in 1991. Appellant said that she thought it was "standard" for divorces and that if she did not have the money when the children entered college, the children could take advantage of scholarships, grants, and loans. Appellant said that if she were forced to pay one-half of the Davidson College expenses, it would compromise her ability to care for their eleven-year-old son remaining in her home, who had a congenital heart defect, Tourette's syndrome, and seizures. Appellant testified that as a junior high school study-hall teacher she earned only $13,500 annually, an amount far less than appellee's income.

Appellant added that she had surgery scheduled to take place in the near future to remove a rare non-malignant brain tumor. The brain tumor causes her to suffer fatigue, headaches, and dizziness. She expected that after surgery she would not be able to work for at least six to eight weeks and, if the surgery was

successful, she would not suffer paralysis. Nevertheless, she would lose hearing in her left ear. While off work, her disability insurance policy would provide her income of only 60% of her usual pay.

Appellant said that her monthly expenses of over $1800 exceeded her income, which included the child support appellee was paying for the youngest child in her custody. Appellant explained that she used credit cards to finance the cost of their youngest child's orthodontic braces, the remaining balance due on her car loan, medical charges, and other payments. Appellant said that she did not have the ability to pay the current request for college expenses or her half of the next year's expected cost of over $35,000. Appellant testified, "I have no idea how I'm going to make it financially."

In a proffer of testimony, which was not considered by the trial judge, appellant's counsel stated that appellant would have testified that appellee focused all of his parental attention on Chalin, exercising no visitation and extending no interest in a relationship with the parties' other two children. Further, appellant would have explained that their adult daughter Myia had been diagnosed manic-depressive and suicidal and had been hospitalized for several months. Consequently, appellant had been left to care for Myia's four-year-old daughter (the parties' granddaughter) and had been requested to be financially responsible to a limited extent with regard to this granddaughter.

Appellee testified that he and his son Chalin conferred about which college he should attend, but that Chalin made the final decision. Appellee testified that he and appellant had conversations about Chalin's education costs prior to the fall of 2002, but he said that appellant refused to assist with those expenses. For his first year of attendance, Chalin was awarded a sizable grant and football scholarship that covered most of the cost. Appellee admitted that he did not provide any information to appellant about how much she owed until May 25, 2003, after Chalin completed his first year of college and after appellee had filed the petition for contempt. Whether Chalin would have a grant for his second year of college beginning in the fall of 2003 was uncertain, but appellee said that Chalin would not be playing football. Appellee anticipated that the cost for tuition, room, and board per year would be approximately $35,000 without financial aid. Appellee stated that his annual income for the previous three years varied, ranging from $44,800 to $65,700.

After considering the proof, the trial judge found that the parties freely, voluntarily, and intelligently entered into this college-expense agreement; that it was a reasonable and rational provision; and that appellant's pending health problems and surgery were not a defense to the petition for contempt.[1] The trial judge held appellant in contempt for failure to pay the amounts to which she agreed, giving her thirty days in which to pay appellee or face incarceration until that obligation was fulfilled. The trial judge also ordered appellant to pay $350 to appellee for his attorney's fees. This appeal followed, and appellant asserts on appeal that the trial judge erred by holding her in contempt, by awarding an attorney's fee in the absence of a request, by imposing incarceration if she did not pay the college expenses within thirty days, and by refusing to consider the additional responsibilities that the other children's needs placed on her.

■■ In cases involving child custody and related matters such as support, we review the case de novo, but we will not reverse a trial judge's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Deluca v. Stapleton*, 79 Ark. App. 138, 84 S.W.3d 892 (2002). Specific to an appeal of a trial court's finding of civil contempt, we will not reverse that finding unless it is against the preponderance of the evidence. *See Brown v. Brown*, 305 Ark. 493, 809 S.W.2d 808 (1991). Although there is evidence to support it, a finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made. *Smith v. Parker*, 67 Ark. App. 221, 998 S.W.2d 1 (1999).

■ A parent can contract and bind himself to support a child past the age of majority, and such a contract is just as binding and enforceable as any other contract. *Worthington v. Worthington*, 207 Ark. 185, 179 S.W.2d 648 (1944). Disobedience of any valid order of a court having jurisdiction to enter it may constitute contempt, punishment for which is an inherent power of the court. *Gatlin v. Gatlin*, 306 Ark. 146, 811 S.W.2d 761 (1991). However, inability to pay is a defense to a contempt citation, unless the inability is due to action or inaction on the part of the appellant. *See Brown v. Brown, supra.*

---

[1] While these findings would clearly support an award of monetary damages, appellee's petition only sought that appellant be held in contempt.

Appellant agrees that she did not pay her half of Chalin's first year of college expenses, but she defended herself on the basis that she simply could not afford it and would be even less able to do so in the coming months. To conclude that this was willful disobedience on her part is clearly erroneous, clearly against a preponderance of the evidence, and therefore we reverse and dismiss the contempt citation.

■ A trial court's power to institute civil contempt in order to acquire compliance with its orders is a long-standing rule of law, but it may not be exercised where the alleged contemnor is without the ability to comply. The practice of imprisoning people for debts was abolished by the Debtor's Act of 1869. *See Black's Law Dictionary* 412 (7th ed.1999) (defining "Debtor's Act of 1869"). Moreover, our own constitution provides: "No person shall be imprisoned for debt in any civil action, or mense or final process, unless in cases of fraud." Ark. Const. art. 2, § 16. Our supreme court has said, in the civil contempt context, that "lack of ability to pay is a complete defense against enforcing payment from the defendant by imprisonment." *Griffith v. Griffith*, 225 Ark. 487, 490, 283 S.W.2d 340 (1955). The *Griffith* court further said: "[t]he court is empowered to punish the defendant by imprisonment for willful obstinacy where it shall appear that he had the means with which to comply with the decree, but it should not imprison him where he shows that he has not the pecuniary ability to comply with the decree and is in such ill health that he cannot earn enough money to do so." *Id.* at 491, 283 S.W.2d at 342.

■ We hold that the trial judge herein erred because appellant demonstrated by more than a preponderance of the evidence that her failure to reimburse appellee for half of Chalin's college expenses was not due to "willful obstinacy" but instead financial inability coupled with ill health. Further demonstrating the lack of willful disobedience, appellant was not provided information about the sum appellee was demanding until *after* he filed his motion for contempt, and the motion was heard within three months of his demand. In addition, on de novo review, we deem it relevant that appellant bore additional responsibilities that affected her ability to pay. In sum, the trial judge's finding of contempt is clearly against the preponderance of the evidence. *See also Feazell v. Feazell*, 225 Ark. 611, 284 S.W.2d 117 (1955) (reversing contempt against divorced husband charged with con-

tempt of court for failing to comply with order directing payment of $50 monthly for support of son; a preponderance of the evidence established that divorced husband's failure to pay arrearage arose from his financial inability and was not in willful disobedience of court order and that therefore imprisonment of divorced husband was not justified).

Appellant argues additionally that her defense to the contempt petition was hampered by the trial court's exclusion of her proffered testimony. In that proffer, appellant averred (1) that appellee did not participate whatsoever in the care of either of the other two children; (2) that appellee gave gifts and attention only to the middle child, Chalin; and (3) that appellant was the sole person left to assist in the care of their mentally ill daughter and minor granddaughter over whom she carried some financial responsibility. The trial judge ruled this particular line of questioning irrelevant and immaterial to the issue of whether appellant had willfully failed to pay her portion of college expenses. Evidentiary rulings are a matter of discretion, and are reviewed only for abuse of that discretion. *See Taylor v. Taylor*, 345 Ark. 300, 47 S.W.3d 222 (2001); *Ozark Auto Transp., Inc. v. Starkey*, 327 Ark. 227, 937 S.W.2d 175 (1997).

We agree that it was irrelevant to these proceedings whether appellant ever exercised visitation with the other two children or gave them any attention. However, relevant and material were the assertions that their daughter's illness required appellant to take care of their granddaughter, including assuming some financial responsibilities. The trial judge's exclusion of this evidence unfairly interfered with appellant's defense in this matter and constituted an abuse of discretion.

Appellant also appeals the order to pay attorney's fees to appellee, in light of the lack of a request for fees and a lack of any proof on the matter. Appellee responds that the trial court has the inherent power to grant these fees and that no abuse is demonstrated. Based upon our holding that the contempt citation was error, we consequently reverse the award of attorney's fees. Even had the contempt citation been upheld, we would have reversed this award as an abuse of discretion. There was no request by appellee for such fees, there was no evidence regarding the amount of attorney fees incurred in filing and pursuing the contempt petition, and on the facts in this case, it is unduly harsh.

The order on appeal is reversed and dismissed.

GLADWIN and VAUGHT, JJ., agree.