SLIP OPINION

Cite as 2016 Ark. 290

# SUPREME COURT OF ARKANSAS

**No.** CV-15-953

| | |
|---|---|
| KATIE D. STEHLE<br><br>APPELLANT<br><br>V.<br><br>ERNEST W. ZIMMEREBNER<br><br>APPELLEE | **Opinion Delivered:** June 30, 2016<br><br>APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23DR-00-856]<br><br>HONORABLE H.G. FOSTER, JUDGE<br><br><u>REVERSED AND REMANDED</u>. |

**COURTNEY HUDSON GOODSON, Associate Justice**

Appellant Katie D. Stehle appeals the order entered by the Faulkner County Circuit Court incarcerating her as a sanction for her failure to make proper efforts to retire her child-support arrearage. For reversal, Stehle contends that the circuit court erred by incarcerating her for civil contempt without finding that she is able to pay the arrearage. She also argues that the circuit court erred in finding her in contempt and by incarcerating her because its orders were too indefinite for her to know the duties imposed on her. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(a)(7), as a second or subsequent appeal following an appeal decided by this court. Both arguments raised on appeal have merit, and we reverse and remand for proceedings consistent with this opinion.

I. *Factual Background*

Our review of the record reflects that Stehle and appellee Ernest W. Zimmerebner divorced in 2001. At that time, the circuit court awarded Stehle custody of their daughter, KZ. However, in 2003, the circuit court granted Zimmerebner's motion for a change of

SLIP OPINION

custody and ordered Stehle to pay child support. The court subsequently denied Stehle's request that custody of the child be returned to her, and Stehle appealed that order. In an unpublished opinion, the court of appeals reversed. *Stehle v. Zimmerebner*, CA-07-165 (May 21, 2008). This court accepted review of that decision, and we affirmed the circuit court's denial of Stehle's motion for a change of custody. *Stehle v. Zimmerebner*, 375 Ark. 446, 291 S.W.3d 573 (2009).

The instant litigation begins with an order filed on May 1, 2014. In it, the circuit court found that Stehle was in willful contempt for her failure to pay child support as ordered, and the court granted judgment for an arrearage in the amount of $15,536.08. Along with Stehle's biweekly support obligation of $189, the court ordered Stehle to pay the additional sum of $37.80 to be applied toward the arrearage. The order also contained a provision stating that "[s]hould [Stehle] miss any payment and remain in default for 30 days, then [Stehle] shall be immediately picked up and incarcerated until such time as all arrears are satisfied."

On January 20, 2015, Zimmerebner filed a motion for contempt and body attachment, alleging that Stehle had missed payments of child support and had remitted sums below the required amount. Pursuant to the May 1, 2014 order, he asked the circuit court to issue an order of body attachment for Stehle's immediate arrest. The motion also included a request for an increase in child support and asserted that Stehle was in contempt for violating certain aspects of the court's visitation orders and for not paying her share of health-care expenses incurred on behalf of the child. The circuit court issued a body attachment that same day, stating that Stehle was to be held on a cash bond of $12,035.99, the current

amount of the arrearage. Stehle responded with a motion to stay execution of the body attachment, and she requested an expedited hearing on her ability to pay the arrearage in support. In her motion and accompanying brief, she alleged that she had been a full-time student from 2012 until the spring of 2014, at which time she had earned a bachelor's degree and a teaching certificate. Stehle also stated that she had obtained a teaching job in late November 2014 and that since early December 2014, her child-support payments had been made pursuant to a wage-withholding order. The circuit court granted Stehle's request to stay the execution of a body attachment pending a hearing that the court set for January 28, 2015.

At the hearing, Stehle testified that she has two children living in her home and that her husband had lost his job the past September. She stated that she had no money in savings, that her house was mortgaged, and that she could not obtain a loan to retire the arrearage. Stehle further testified that, following her graduation, she worked part-time at a daycare center and that she worked as much as she was allowed. She said that she had paid what she could in support except for those times when she did not have work. Stehle stated that in the fall of 2014 she worked forty hours per week as an unpaid substitute teacher as part of a teaching-internship program. She testified that she would learn the following June whether her teaching contract would be extended for another year.

Following the hearing, the circuit court issued an order dated February 13, 2015. In this order, the court continued the stay of the body attachment and reserved ruling on the alleged contempt for her failure to pay support until a review hearing in July 2015. The order stated that Stehle "should make every effort to pay her child support pursuant to

previous orders of the Court, including maintaining full-time gainful employment." The court also ordered Stehle to apply toward the child-support arrearage any income-tax refund she might receive for the 2014 tax year.

On March 16, 2015, the circuit could held a hearing on the other contempt issues and the request for increased child support, as well as a related petition for an order of protection. In its order from that hearing dated April 2, 2015, the circuit court found that Stehle was in contempt for engaging in a series of behaviors in violation of previous orders. It withheld punishment pending the July 2015 hearing. The circuit court increased Stehle's child-support obligation to $201 to be paid every two weeks, and the court ordered her to pay $369.60 as her portion of the child's medical expenses. In addition, the circuit court awarded Zimmerebner $3,100 in attorney's fees. With respect to both the medical expenses and attorney's fees, the order states that Stehle "shall make a good faith effort to retire this debt and the Court shall evaluate her efforts at the review hearing."

At the July 2015 hearing, the circuit court determined that the arrearage had been reduced to $11,909. The parties agreed that Stehle had paid $200 toward the medical expenses and attorney's fees. Stehle's husband, Michael Stehle, testified that after he lost his job, he cashed in his 401k that netted $34,000, which was used during the period of his unemployment. Michael stated that they had $380 in the bank; that they were two months behind on their mortgage; and that they had been required to make substantial repairs to their vehicle. He testified that they owed state and federal income taxes for the 2014 tax year; thus, they did not receive a refund.

SLIP OPINION

The circuit court took the issue of Stehle's contempt and possible incarceration under advisement. On July 31, 2015, the circuit court entered an order finding Stehle in contempt and requiring her to report to jail every weekend. Specifically, the order states,

1. That Defendant shall report to the Faulkner County Detention Center . . . at 5:00 p.m. on July 31, 2015, as a sanction for the Court's finding of civil contempt for failure to make proper efforts to retire her child support arrearages as of July 27, 2015, in the amount of $11,909.00 (which does not include interest accrued as of March 31, 2014). That Defendant shall be released at 7:00 p.m. Sunday, August 2, 2015, and Defendant shall report to the Faulkner County Detention Center the following Friday at 5:00 p.m. until Sunday at 7:00 p.m. where she will continue to be incarcerated every weekend until proper effort, in the opinion of the Court, is made to retire the sums previously ordered to be paid.

2. In determining what is a proper effort, the Court will consider substantial payment reducing the arrearages, a substantial regular payment being established, additional employment (such as a summer job given that Defendant is a teacher and has her summers off), or any other action that convinces the Court that the Defendant is taking this obligation seriously, which to date has not occurred.

3. Upon satisfaction of the Court that substantial effort is being made, Defendant will be deemed to have purged herself of contempt. The issue of Plaintiff's request for $800.00 in attorney's fees for the present action is taken under advisement.

Stehle brings this appeal from the circuit court's decision.

## II. *Ability to Pay*

As her first point on appeal, Stehle argues that the circuit court erred by holding her in contempt without determining whether she has the ability to pay additional sums toward the arrearage. She contends that she does not have the means to pay the arrearage and that the circuit court wrongfully ordered her incarceration for the nonpayment of this debt.

Contempt is divided into criminal contempt and civil contempt. *Johnson v. Johnson*, 343 Ark. 186, 33 S.W.3d 492 (2000). Criminal contempt preserves the power of the court, vindicates its dignity, and punishes those who disobey its orders. *Omni Holding & Dev. Corp. v. 3D.S.A., Inc.*, 356 Ark. 440, 156 S.W.3d 228 (2004). Civil contempt, on the other hand,

SLIP OPINION

protects the rights of private parties by compelling compliance with orders of the court made for the benefit of those parties. *Johnson*, *supra*. Because civil contempt is designed to coerce compliance with the court's order, the contemnor may free himself or herself by complying with the order. *Conlee v. Conlee*, 370 Ark. 89, 257 S.W.3d 543 (2007). This is the source of the familiar saying that civil contemnors "carry the keys of their prison in their own pockets." *Ivy v. Keith*, 351 Ark. 269, 280, 92 S.W.3d 671, 678 (2002). Criminal contempt, by contrast, carries an unconditional penalty, and the contempt cannot be purged. *Id.* (citing *Fitzhugh v. State*, 296 Ark. 137, 752 S.W.2d 275 (1998)).

We have recognized that it is proper for a court to make provision for the payment of arrearages in such amounts as the circumstances warrant in order to allow the judgment debtor to avoid punishment for contempt of court. *Holley v. Holley*, 264 Ark. 35, 568 S.W.2d 487 (1978). However, in a contempt proceeding, where the object is to coerce the payment of money, the lack of ability to pay is a complete defense against enforcing payment from the defendant by imprisonment. *Griffith v. Griffith*, 225 Ark. 487, 283 S.W.2d 340 (1955). As we have recognized, the practice of imprisoning people for debts was abolished long ago by the Debtor's Act of 1869. *Ivy*, *supra*. This fundamental concept is embodied in our constitution, which provides that "[n]o person shall be imprisoned for debt in any civil action, or mense or final process, unless in cases of fraud." Ark. Const. art. 2, § 16. Imprisonment is "only justified on the ground of willful disobedience to the orders of the court, and, so soon as it is made to appear that the defendant is unable to comply with the orders of the court, he should be discharged . . . otherwise it would convert the court's

power into an instrument for imprisonment for debt[.]" *East v. East*, 148 Ark. 143, 146, 229 S.W. 5, 6 (1921).

In the present case, the order of contempt is civil in nature because it is intended to coerce compliance with the circuit court's order regarding the payment of an arrearage in child support. The circuit court has seen fit to incarcerate Stehle until she purges herself of the contempt. However, the court did so without making any finding whatsoever that Stehle has the ability to pay, and the record does not indicate that the court even took this requirement into consideration. Imprisonment for disobedience of an order to pay a sum into the court, without finding whether the party is able to pay the sum, is imprisonment for debt in violation of the Arkansas Constitution. *Godwin v. Godwin*, 268 Ark. 364, 596 S.W.2d 695 (1980). When no finding is made, this court remands for the circuit court to make that determination. *Hull v. Gardner*, 334 Ark. 325, 974 S.W.2d 453 (1998); *Whitworth v. Whitworth*, 331 Ark. 461, 961 S.W.2d 768 (1998); *Gould v. Gould*, 308 Ark. 213, 823 S.W.2d 890 (1992). We do so here because the circuit court neglected to make the critical determination whether Stehle has the ability to comply before imprisoning her for this debt.

### III. *Clarity of the Order*

Stehle asserts under this point that the circuit court's order is too indefinite for her to know how she might purge herself of the contempt. This argument is based on the familiar rule of law that such an order must be definite in its terms, clear as to what duties it imposes, and express in its commands. *James v. Pulaski Cty. Circuit Court*, 2014 Ark. 305, 439 S.W.3d 19; *Lilly v. Earl*, 299 Ark. 103, 771 S.W.2d 277 (1989). We agree that the circuit court's order fails this test.

The order states that Stehle is to be incarcerated every weekend "until proper effort, in the opinion of the Court," is made to retire the arrearage. The court stated that it would consider as a proper effort a "substantial payment," a "substantial regular payment," a summer job, or "any other action that convinces the Court that [Stehle] is taking this obligation seriously[.]" As is evident, what may or may not qualify as a "proper effort" is left entirely to the subjective opinion of the circuit court. In reading the order, Stehle is left to speculate whether a "substantial payment" might be $500, or would nothing short of $2,500 suffice? Would a "substantial regular," biweekly payment of an extra $100 free Stehle from imprisonment, or does the circuit court expect a greater amount? What job must Stehle find at the end of the summer that would satisfy the circuit court that Stehle is making a proper effort? What "other action" might Stehle take to purge herself of the contempt? Because the answers to these questions are uncertain, the order falls woefully short of being definite, clear, and express in its commands. A person's liberty cannot hinge on such imprecision. Accordingly, we reverse on this point as well.

Reversed and remanded.

BRILL, C.J., concurs.

DANIELSON, J., and Special Justice JASON B. KELLEY dissent.

HART, J., not participating.

**HOWARD W. BRILL, Chief Justice, concurring.** I agree with the majority's decision to reverse and remand, but I write separately to provide a comprehensive analysis for my conclusion.

## I. *Coercive Civil Contempt*

As early as the tenth century, the common law recognized the power of contempt.[1] With the development of the chancery courts, the law of contempt split into criminal and civil contempt. *See Omni Holding & Dev. Corp. v. 3 D.S.A., Inc.*, 356 Ark. 440, 156 S.W.3d 228 (2004). Criminal contempt preserves the power of the court, vindicates its dignity, and punishes those who willfully disobey its orders, either directly or indirectly. *Id.* The criminal contempt power rests upon the inherent authority of a court to maintain order. *See* Ark. Const. art. 7, § 26; Ark. Code Ann. § 16-10-108 (Repl. 2010); *see also Ivy v. Keith*, 351 Ark. 269, 92 S.W.3d 671 (2002).

In contrast, civil contempt has different objectives and different procedures and is further subdivided into two variations. Compensatory civil contempt gives damages for the injuries a party suffered when the opposing party disobeyed a court order. *See C.R.T., Inc. v. Brown*, 269 Ark. 114, 602 S.W.2d 409 (1980) (asphalt company ignored injunction and thus caused injuries to plaintiff's cattle).[2] These damages are both nonpunitive and avoidable. *Mine Workers v. Bagwell*, 512 U.S. 821 (1994).

On the other hand, coercive civil contempt is intended to compel, or encourage, a party to obey an injunction in the future. It looks ahead, not back. The orders do not constitute actual penalties or sanctions, because they are entirely conditional in nature. The

---

[1] Ronald Goldfarb, *The History of the Contempt Power*, 1961 Wash. U. L. Q. 1, 9 (1961) (stating that "there is no greater crime than contempt because all within the realm ought to obey the King and be part of his peace").

[2] *See* Louise Becker, The Remedial Side of Contempt When Injunctions are Disregarded, 1983 Ark. L. Notes 5.

court may threaten a prospective fine if an order is disobeyed. Alternatively, as in this instance, the court may order incarceration unless and until the party obeys.[3] By obeying the order, the party avoids imprisonment. When compliance occurs, or is no longer feasible, the basis for coercive contempt ceases. Resting historically in equity, coercive contempt is an inherent tool of all courts to compel obedience to proper orders.

Coercive civil contempt, including the threat of incarceration, may be used to compel payment of child-support arrearages. *See* Ark. Code Ann. §§ 9-12-314(d) and 9-12-214(j) (Repl. 2015); *Gould v. Gould*, 308 Ark. 213, 823 S.W.2d 890 (1992). Our state constitution provides that "[n]o person shall be imprisoned for debt in any civil action." Ark. Const. art. 2, § 16. Thus, we do not have debtors' prisons. *Aswell v. Aswell*, 88 Ark. App. 115, 195 S.W.3d 365 (2004). However, consistent with the constitutional prohibition, our case law is equally clear that a person may be jailed for failure to comply with a court order, including a court order that demands the payment of money. *Harrison v. Harrison*, 239 Ark. 756, 394 S.W.2d 128 (1965); *Griffith v. Griffith*, 225 Ark. 487, 283 S.W.2d 340 (1955).

Incarceration for contempt for failing to pay child support may not be used unless the contemnor has the ability to pay. *Gould*, 308 Ark. 213, 823 S.W.2d 890. While inability to pay is a defense to conditional incarceration, the trial court may consider the actions or inactions of the responsible party that may have created the inability to pay. *See, e.g.*, *Brown v. Brown*, 305 Ark. 493, 809 S.W.2d 808 (1991); *Aswell*, 88 Ark. App. 115, 195 S.W.3d.

---

[3] *See In re Grand Jury Subpoena*, 97 F.3d 1090 (8th Cir. 1996) (upholding conditional incarceration in the face of a constitutional challenge).

365. A factual finding that the party created the inability to pay supports the contempt order and conditional incarceration. *Ex parte Coffelt*, 239 Ark. 324, 389 S.W.2d 234 (1965). In the absence of such a factual finding, we have remanded cases for a finding of the ability to pay. *Whitworth v. Whitworth*, 331 Ark. 461, 961 S.W.2d 768 (1998).

While unimportant in criminal contempt, the ability to pay "marks a dividing line between civil and criminal contempt." *Turner v. Rogers*, 564 U.S. 431, 445 (2011). The failure to determine the ability to pay raises due process considerations. In *Turner*, 564 U.S. 431, the Supreme Court vacated a conditional incarceration order against a parent delinquent in his child-support obligations:

> He did not receive clear notice that his ability to pay would constitute the critical question in his civil contempt proceeding. No one provided him with a form (or the equivalent) designed to elicit information about his financial circumstances. The court did not find that [he] was able to pay his arrearage, but . . . nonetheless found [him] in civil contempt and ordered him incarcerated.

*Id.* at 449.

In the present case, the circuit court stated in its July 31, 2015 order that Stehle would report to jail "as a sanction[4] for the court's finding of civil contempt for failure to make proper efforts to retire her child support arrearage as of July 27, 2015 in the amount of $11,909.00." Here, neither the record nor the circuit court's order contains an express finding that Stehle has the ability to pay or that her inability was the result of her own actions or inactions. Accordingly, under this analysis, I would reverse the circuit court's ruling on this issue and remand for further proceedings.

---

[4] Although the circuit court used the term "sanction," the circuit court's order clearly means coercive civil contempt.

## II. *Incarceration*

Because civil contempt is designed to coerce compliance with the court's order, the civil contemnor may avoid additional proceedings by complying with the order. *See Ivy*, 351 Ark. 269, 92 S.W.3d 671. When the threat of incarceration is the tool employed, compliance is the basis for the proverbial saying that civil contemnors "carry the keys of their prison in their own pockets." *Id*. at 280, 92 S.W.3d at 678. Before a person can be held in contempt for violating a court's order, the order must be definite in its terms, clear as to what duties it imposes, and express in its commands. *Ivy*, 351 Ark. 269, 92 S.W.3d 671. The key to the prison cannot be obscured.

Our case law mandates that the party be informed of the method and means of freeing himself or herself from the conditional incarceration. *See Brown*, 305 Ark. 493, 809 S.W.2d 808 (subject to incarceration unless $50,000 paid to former wife); *Harrison*, 239 Ark. 756, 394 S.W.2d 128 (incarcerated unless $3000 paid); *Williams v. Ramsey*, 101 Ark. App. 61, 270 S.W.3d 345 (2007) (father imprisoned until he paid $1500 in previously ordered attorney's fees).

A coercive civil contempt order is injunctive in nature. It tells the party what to do or not to do. Rule 65(d) of the Arkansas Rules of Civil Procedure, which governs every injunction and restraining order, provides as follows:

> (1) *Contents*. Every order granting an injunction and every restraining order must:
> (A) state the reasons why it issued;
> (B) state its terms specifically; and
> (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.

Alongside the case law previously mentioned, the spirit, if not the letter of this rule, requires

SLIP OPINION

that a party be clearly informed of the means of compliance with the court order.

In this instance, the circuit court's order does not appear definite in its terms, clear on the duties that it imposes, and express in its commands to Stehle how to pay the $11,909 in child-support arrearage. In its order, the circuit court stated that Stehle would report to the Faulkner County Detention Center where she would remain incarcerated every weekend until she made a proper effort to retire the child-support arrearage. The court continued that "a proper effort" would include a "substantial payment reducing the arrearage, a substantial regular payment . . . , additional employment . . ., or any other action that convinces the court that [Stehle] is taking this obligation seriously" that would be noted by the court and "upon satisfaction of the court that substantial effort is being made," Stehle would "be deemed to have purged herself of contempt."

Here, Stehle did not hold the key to the jail in her own pocket. The circuit court's four options for paying the arrearage were not precise. They did not adequately outline a dollar amount to be paid, the time in which that amount would be paid, the application of that amount to the arrearage or to the current child-support obligation, and the point at which Stehle would "purge[ ] herself of contempt." Instead, these conditions hinged on the circuit court's satisfaction that a "substantial effort" was to be made by Stehle without informing her when that satisfaction would be met. Thus, the court's order is speculative at best and did not provide enough guidance to Stehle to "purge[ ] herself of contempt" and to release herself from incarceration.

Finally, the actions of the circuit court demonstrate commendable patience in dealing with Stehle's willful failure to pay the arrearages in child support. Similarly, the circuit

court's actions reveal its flexibility in ordering that Stehle make reasonable efforts to pay the accumulated child support. I would not wish to tie the hands of circuit courts in using the contempt power to compel obedience to proper court decrees. But when an order places a person in jail, even for a weekend, for failure to obey, the terms must be clear enough so that the person can turn the key and step out of jail. Accordingly, for these reasons, I would hold that the circuit court did not provide a proper basis for conditional incarceration and would remand for further proceedings.

**PAUL E. DANIELSON, Justice, dissenting.** I respectfully dissent. The circuit court's order finding appellant Katie D. Stehle in civil contempt and ordering her conditional incarceration was not clearly against the preponderance of the evidence. *See Omni Holding & Dev. Corp. v. 3D.S.A., Inc.*, 356 Ark. 440, 156 S.W.3d 228 (2004) (Our standard of review for civil contempt is whether the circuit court's finding is clearly against the preponderance of the evidence.).

First, the majority focuses on Stehle's ability to pay her child-support arrearage, which, at the time of the circuit court's July 31, 2015 order, totaled $11,909 plus interest. However, the July 31, 2015 order did not require Stehle to pay the entire arrearage of $11,909; it required only that she make a "proper effort . . . to retire the sums previously ordered to be paid." Thus, her ability to pay the total amount is irrelevant.

Second, the circuit court's orders were sufficiently definite in their terms, clear as to what duties they imposed, and express in their commands. *See, e.g., Ivy v. Keith*, 351 Ark. 269, 92 S.W.3d 671 (2002). The May 1, 2014 order, wherein the circuit court initially found Stehle to be in contempt, can only be described as definite, clear, and express: it

ordered her to pay $37.80 biweekly toward the arrearage and $189 biweekly in current support; if she missed a payment and remained in default for thirty days, she would be immediately incarcerated "until such time as all arrears are satisfied." The circuit court's July 31, 2015 order was considerably more lenient, but it too was sufficiently definite. It required only that Stehle make a "proper effort" to retire the arrearage, and it clearly defined what would constitute a "proper effort": (1) "substantial payment reducing the arrearages"; (2) "a substantial regular payment being established"; (3) "additional employment (such as a summer job given that Defendant is a teacher and has her summers off)"; or (4) "any other action that convinces the Court that the Defendant is taking this obligation seriously." The fact that the circuit court offered Stehle numerous alternative methods by which she could purge herself of the contempt is evidence of its laudable attempt to work with her, rather than evidence of a lack of clarity.

For the above-stated reasons, I would affirm the circuit court's order.

Special Justice JASON B. KELLEY joins in this dissent.

*Dustin Duke*, Center for Arkansas Legal Services, for appellant.

No response.