Howard W. Brill, Chief Justice, concurring. I agree with the majority’s decision to reverse and remand, but I write separately to provide a comprehensive analysis for my conclusion. I. Coercive Civil Contempt As early as the tenth century, the common law recognized the power of contempt.[1] With the development of the chancery courts, the law of contempt split into criminal and civil contempt. See Omni Holding & Dev. Corp. v. 3D.S.A., Inc., 356 Ark. 440, 156 S.W.3d 228 (2004). Criminal contempt preserves the power of the court, vindicates its dignity, and punishes those who willfully disobey its orders, either directly or indirectly. Id. The criminal contempt power rests upon the inherent authority of a court to maintain order. See Ark. Const, art. 7, § 26; Ark. Code Ann. § 16-10-108 (Repl. 2010); see also Ivy v. Keith, 351 Ark. 269, 92 S.W.3d 671 (2002). In contrast, civil contempt has different objectives and different procedures and is further subdivided into two variations. Compensatory civil contempt gives damages for the injuries a party suffered when the opposing party disobeyed a court order. See C.R.T., Inc. v. Brown, 269 Ark. 114, 602 S.W.2d 409 (1980) (asphalt company ignored injunction and thus caused injuries to plaintiffs cattle).[2] These damages are both nonpunitive and avoidable. Mine Workers v. Bagwell, 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). On the other hand, coercive civil contempt is intended to compel, or encourage, a party to obey an injunction in the future. It looks ahead, not back. The orders do not constitute actual penalties or sanctions, because they are entirely conditional in nature. The court may threaten a prospective fíne if an order is disobeyed. Alternatively, as in this instance, the court may order incarceration unless and until the party obeys.[3] By obeying the order, the party avoids imprisonment. When compliance occurs, or is no longer feasible, the basis for coercive contempt ceases. Resting historically in equity, coercive contempt is an inherent tool of all courts to compel obedience to proper orders. Coercive civil contempt, including the threat of incarceration, may be used to compel payment of child-support arrearag-es. See Ark. Code Ann. §§ 9-12-314(d) and 9-12-2140) (Repl. 2015); Gould v. Gould, 308 Ark. 213, 823 S.W.2d 890 (1992). Our state constitution provides that “[n]o person shall be imprisoned for debt in any civil action.” Ark. Const. art. 2, § 16. Thus, we do not have debtors’ prisons. Aswell v. Aswell, 88 Ark. App. 115, 195 S.W.3d 365 (2004). However, consistent with the constitutional prohibition, our case law is equally clear that a person may be jailed for failure to comply with a court order, including a court order that demands the payment of money. Harrison v. Harrison, 239 Ark. 756, 394 S.W.2d 128 (1965); Griffith v. Griffith, 225 Ark. 487, 283 S.W.2d 340 (1955). Incarceration for contempt for failing to pay child support may not be used unless the contemnor has the ability to pay. Gould, 308 Ark. 213, 823 S.W.2d 890. While inability to pay is a defense to conditional incarceration, the trial court may consider the actions or inactions of the responsible party that may have created the inability to pay. See, e.g., Brown v. Brown, 305 Ark. 493, 809 S.W.2d 808 (1991); Aswell, 88 Ark.App. 115, 195 S.W.3d. 365. A factual finding that the party created the inability to pay supports the contempt order and conditional incarceration. Ex parte Coffelt, 239 Ark. 324, 389 S.W.2d 234 (1965). In the absence of such a factual finding, we have remanded cases for a finding of the ability to pay. Whitworth v. Whitworth, 331 Ark. 461, 961 S.W.2d 768 (1998). While unimportant in criminal contempt, the ability to pay “marks a dividing line between civil and criminal contempt.” Turner v. Rogers, 564 U.S. 431, 445, 131 S.Ct. 2507, 180 L.Ed.2d 452 (2011). The failure to determine the ability to pay raises due process considerations. In Turner, 564 U.S. 431, 131 S.Ct. 2507, the Supreme Court vacated a conditional incarceration order against a parent delinquent in, his child-support obligations: He did not receive clear notice that his ability to pay would constitute the critical question in his civil contempt proceeding. No one provided him with a form (or the equivalent) designed to elicit information about his financial circumstances. The court did not find that [he] was able to pay his arrearage, but ... nonetheless found [him] in civil contempt and ordered him incarcerated. Id. at 449, 131 S.Ct. 2507. In the present case, the circuit court stated in its July 31, 2015 order that Stehle would report to jail “as a sanction[4] for the court’s finding of civil contempt for failure to make proper efforts to retire her child support arrearage as of July 27, 2015 in the amount of $11,909.00.” Here, neither the record nor the circuit court’s order contains an express finding that Stehle has the ability to pay or that her inability was the result of her own actions or inac-tions. Accordingly, under this analysis, I would reverse the circuit court’s ruling on this issue and remand for further proceedings. II. Incarceration Because civil contempt is designed to coerce compliance with the court’s order, the civil contemnor may avoid additional proceedings by complying with the order. See Ivy, 351 Ark. 269, 92 S.W.3d 671. When the threat of incarceration is the tool employed, compliance is the.basis for the proverbial saying that civil contemnors “carry the keys of their prison in their own pockets.” Id. at 280, 92 S.W.3d at 678. Before a person can be held in contempt for violating a court’s order, the order must be definite in its terms, clear as to what duties it imposes, and express in its commands. Ivy, 351 Ark. 269, 92 S.W.3d 671. The key to the prison cannot be obscured. Our case law mandates that the party be informed of the method and means of. freeing himself or herself from the conditional incarceration. See Brown, 305 Ark. 493, 809 S.W.2d 808 (subject to incarceration unless $50,000 paid to former wife); Harrison, 239 Ark. 756, 394 S.W.2d 128 (incarcerated unless $3000 paid); Williams v. Ramsey, 101 Ark. App. 61, 270 S.W.3d 345 (2007) (father imprisoned until he paid $1500 in previously ordered attorney’s fees). A coercive civil contempt order is injunc-tive in nature. It tells the party what to do or not to do. Rule 65(d) of the Arkan.sas Rules of Civil Procedure, which governs every injunction and restraining order, provides as follows: (1) Contents. Every order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; arid (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required. Alongside the case law previously mentioned, the spirit, if not the letter of this rule, requires that a party be clearly informed of the means of compliance with the court order. '' In this instance, the circuit court’s order does not appear definite in its terms, clear on the duties that it imposes, and express in its commands to Stehle how to pay the $11,909 in child-support arrearage. In its order, the circuit court stated that Stehle would report to the Faulkner County Detention Center where she would remain incarcerated every weekend until she made a proper effort to retire the child-support arrearage. The court continued that “a proper effort” would include a “substantial payment reducing the arrear-age, a substantial regular payment ...', additional employment ..., or any other action that convinces the court that [Stehle] is táking this obligation seriously” that would be noted by the court and “upon satisfaction of the court that substantial effort is being made,” Stehle would “be deemed to have purged herself of contempt.” Here, Stehle did not hold the key to the jail in her own pocket. The circuit court’s four options for paying the arrearage were not precise. They did not. adequately outline a dollar amount to be paid, the time in which that amount would be paid, the application of that amount to the arrearage or to the current child-support obligation, and the point at which Stehle would “purge[.] herself of contempt.” Instead, these conditions hinged on the.,circuit court’s satisfaction that a “substantial effort” was to be made by Stehle without informing her when that satisfaction would be met. Thus, the court’s order is speculative at best and did not provide enough guidance to Stehle to “purge[] herself of contempt” and to release herself from incarceration. Finally, the actions of the circuit court demonstrate commendable patience in dealing with Stehle’s willful failure to pay the arrearages in child support. Similarly, the circuit court’s actions reveal its flexibility in ordering that Stehle make reasonable efforts to pay the accumulated child support. I would not wish to tie the hands of circuit courts in using the contempt power to compel obedience to proper court decrees. But when an order places a person in jail, even for a weekend, for failure to obey, the terms must be clear enough so that the person can turn the key and step out of jail. Accordingly, for these reasons, I would hold that the circuit court did not provide a proper basis for conditional incarceration and would remand for further proceedings. . Ronald Goldfarb, The History of the Contempt Power, 1961 Wash. U.L.Q. 1, 9 (1961) (stating that "there is no greater crime than contempt because all within the realm ought to obey the King and be part of his peace”). . See Louise Becker, The Remedial Side of Contempt When Injunctions are Disregarded, 1983 Ark. L. Notes 5. . See In re Grand Jury Subpoena, 97 F.3d 1090 (8th Cir.1996) (upholding conditional incarceration in the face of a constitutional challenge). . Although the circuit court used the term “sanction,” the circuit court's order clearly means coercive civil contempt.