WAYMOND M. BROWN, Judge
This is an interlocutory appeal challenging the Faulkner County Circuit Court's order finding Terry Wyatt in civil contempt. The contempt finding stems from Terry's failure to comply with the circuit court's January 2016 order in his divorce from his ex-wife Lorene. The primary inquiry on appeal is whether the circuit court erred by finding that Terry had the ability to pay or make a credible attempt to pay the judgment awarded to Lorene. We affirm.
The Faulkner County Circuit Court entered an order and judgment in Lorene and Terry's divorce action in January 2016. The order awarded Lorene a substantial judgment against Terry, and one month after entry of the order, Lorene filed a motion for contempt. She asked that Terry be held in civil contempt and jailed until he complied with the circuit court's order. Terry resisted Lorene's motion arguing that he was not in willful contempt because he lacked the means or ability to comply with the order.
On May 31, 2016, the circuit court held a hearing on Lorene's motion for contempt. Also addressed was Terry's request for a waiver of the requirement for a supersedeas bond. At the hearing, it was established that Terry had not paid any alimony, had not paid any money toward the judgment entered against him, and was paying child support in the amount previously ordered by the circuit court and not his current obligation-$136 a week instead of the ordered $443 a week. Thus, it became Terry's burden to prove that he was unable to comply with the terms of the January 2016 order. Because the primary issue on appeal is whether Terry had the ability to pay is fact-intensive, a detailed synopsis of the evidence presented at the May 31 hearing is necessary.
*506 Terry testified that he worked for A-1 Recovery Towing & Recovery, Inc., which was owned by Gerald Kennon, through August 2016. At that time, he began working for Cenark Construction, a company owned by his sons. He worked for Cenark Construction until February 2017, and he has been self-employed since that date. Additionally, Terry testified at length that he was unable to pay the judgment against him. He stated that he has no real property, cannot get a bond, and has numerous creditors, including the IRS.
By contrast, the evidence demonstrated that Terry continued to live a lifestyle comparable to the one he enjoyed prior to the divorce. He lived at 56 Wyatt Lane-the house he lived in during the divorce proceedings. Although he stated that his sons live with him and pay the rent. He also drove the same vehicle, but he claimed Gerald Kennon owned the vehicle and paid the insurance and tags on it and that he paid the $794 monthly payment. Additionally, Terry took a ski vacation; he testified that his sons paid for the vacation.
Evidence was also elicited that Terry had paid $25,000 to appeal the circuit court's January 2016 order. Terry said he borrowed this money from his sister. In addition, $175,000 was paid to settle Terry's bankruptcy proceeding. The language in the order provided that the debtor shall pay to receive a discharge. However, Terry and Gerald Kennon testified that it was Gerald who paid the $175,000 and not Terry.
Other relevant evidence included the disclosure that Amanda Mauser-an employee of his sons' corporations-was performing the task of mailing his weekly child-support payments and doing other personal business for him, including his tax returns. Terry testified that Mauser was not his employee and that he did not pay her.
Terry also admitted that 56 Wyatt Lane was searched by law enforcement and $20,000 cash was found in a safe. This money came from the sale of an excavator that a corporation owned. Terry admitted that he had the check made payable to him personally and then cashed it because the corporation had numerous judgments against it and he wanted to receive the benefit of the sale.
At the conclusion of the hearing, the circuit court announced from the bench that Terry was in contempt of court. In its announcement, the circuit court made clear that Terry lacked credibility, and it emphasized that Terry continued to maintain the lifestyle he had prior to the divorce. The circuit court found that he had neither complied with the January 2016 order nor made substantial efforts toward attempting to comply despite having the means to do so. Additionally, the circuit court ordered that no stay would be granted unless Terry posted a $600,000 supersedeas bond.
An initial contempt order was signed on May 31, 2016, and was electronically filed the following day. The stated purpose of this order was to facilitate Terry's commitment to the jail, and the order provided that Lorene's counsel was to prepare a more detailed order. A more detailed order was not immediately filed with the Faulkner County Circuit Clerk.
On July 20, 2016, Terry's counsel filed a motion for release, alleging his inability to post a bond or otherwise pay the sums ordered in the January 2016 order. Thereafter, on July 21, 2016, a detailed contempt order was entered of record. This order provided that Terry was in contempt of court and that he had the ability to either comply or make a credible effort to comply with the court's orders. It also included a provision that the request for a waiver of a supersedeas bond was denied and a bond *507 amount of $600,000 was required. Thereafter, Terry's counsel then filed another motion for release on the same grounds previously alleged. On July 28, 2016, Terry filed a notice of interlocutory appeal pursuant to Arkansas Rule of Appellate Procedure-Civil 2(a)(13).
I. Issues on Appeal
In support of reversal, Terry argues the circuit court erred by holding him in contempt because he is unable to comply with the circuit court's order, which is a complete defense to contempt. In addition, he argues that his incarceration hinders any effort he could make to comply with the court's directive and that his health is a factor that weighs against his continued incarceration. He further argues that the setting of a $600,000 supersedeas bond and refusing to stay execution of the judgment impairs his appeal rights.
II. The Supersedeas Bond
Because the contempt issues are interrelated, we begin our review by addressing Terry's argument that the circuit court erred by refusing to issue a stay and requiring a $600,000 supersedeas bond. We do not reach the merits of this issue.
Terry's notice of appeal provides that he appeals the circuit court's contempt order pursuant to Arkansas Rule of Appellate Procedure-Civil 2(a)(13), which allows an appeal to be taken from a contempt order. Because Terry does not designate the denial of the supersedeas bond for appeal, we decline to address it.
III. Contempt
Terry's remaining arguments on appeal challenge the circuit court's contempt finding. Disobedience of any valid judgment, order, or decree of a court having jurisdiction to enter it may constitute contempt, and punishment for such contempt is an inherent power of the court.[1] Contempt is divided into two categories: civil and criminal.[2] A conditional penalty is civil in nature because it is specifically designed to coerce compliance with the court's order, and the civil contemnor may free himself by complying with the order.[3]
Here, the circuit court held Terry in civil contempt. The contempt order provided that Terry was found to be in contempt and committed him to the Faulkner County Detention Center until he complied with the court's January 2016 order, made a credible effort to do so, posted a $200,000 cash bond, or until further order of the court. As the saying goes, by the terms of the order, Terry carried the keys of his prison in his own pocket.[4]
To establish civil contempt, there must be willful disobedience of a valid court order.[5] Our court will not reverse a finding of civil contempt unless it is clearly against the preponderance of the evidence, and a finding of contempt is clearly against the preponderance of the evidence if, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.[6]
We begin by considering Terry's argument that he was unable to pay the judgment and thus, the circuit court erred by finding him in civil contempt and ordering *508 his incarceration. In contempt proceedings where the object is to coerce the payment of money, the lack of ability to pay is a complete defense against enforcing payment from the defendant by imprisonment.[7]
The question on appeal is whether the circuit court's ruling that Terry had the ability to pay was clearly against the preponderance of the evidence.[8] In support of his argument that the circuit court erred, Terry directs our attention to testimony regarding his employment and expenses. He testified that he had very little money, no real estate, and no way to post a bond. He highlighted that Lorene began to vigorously pursue collection through garnishments immediately after the judgment was entered, and she found no money to satisfy her judgment. Terry also emphasizes that he provided the only documentary evidence of his income and expenses.
Terry argues that because his evidence of his income and expenses was unrebutted, the finding of contempt was clearly against the preponderance of the evidence. His argument is problematic. First, we always consider the testimony of an interested party to be controverted.[9] And, whether testimony is credible is a question for the factfinder.[10] Here, the circuit court specifically found that Terry lacked credibility. Secondly, Lorene's attorney vigorously cross-examined Terry and his witnesses and demonstrated that he was still living a lifestyle that did not comport with his exhibited income and expenses. Terry continued to live in the same house and drive the same vehicle. He had also taken a ski vacation, paid $25,000 to an attorney to appeal the order in his divorce case, and had his bankruptcy proceeding settled with a payment of $175,000.
Along these lines, Terry also contends the circuit court made erroneous findings regarding his lifestyle and the nature of his bankruptcy proceedings. Terry complains that the circuit court clearly erred by holding the generosity of others against him. We disagree. The circuit court stressed the significance that Terry has maintained the lifestyle he has enjoyed since the divorce and found Terry lacked credibility. Ultimately, the circuit court found that Terry was able to comply or make a credible attempt to comply with its orders. We are not left with a definite and firm conviction that a mistake was made.
Terry makes three additional arguments to support a reversal of his contempt finding: (1) that his continued incarceration demonstrates his inability to pay, (2) that his continued incarceration has the opposite effect of the one sought because he cannot earn money, and (3) that his incarceration is negatively affecting his health. Each of these arguments is also without merit.
First, we address Terry's contention that his continued incarceration demonstrates his inability to pay. We are not persuaded that this amounts to reversible error. Evidence shows that Terry has gained access to significant amounts of money when he deemed it important. For instance, the $25,000 he paid to appeal from the ruling in his divorce and the $175,000 paid to receive a discharge in his bankruptcy proceedings. Furthermore, there are facts demonstrating that Terry is willing to conceal money from creditors. He admitted hiding $20,000 from other creditors.
*509 Additionally, Terry argues that his continued incarceration highlights the impossibility of his compliance. In this instance, we disagree. The circuit court has found that Terry lacks credibility and that he has access to large amounts of money when it is important to him. Thus, a finding that his continued incarceration may, in fact, coerce compliance is not against the preponderance of the evidence.
As a final argument, Terry claims that his continued incarceration is negatively affecting his health. After the filing of the notice of appeal, the circuit court entered an order for release for medical treatment. The order allowed Terry to be assessed concerning his blood-pressure readings. Later, Terry filed a motion for continued medical treatment and release and a supplemental motion for medical treatment. In these motions he alleged that the detention facility was not adequately treating his condition. As a preliminary matter, we acknowledge that this information was not available to the circuit court when it entered its contempt order. Thus, it is not properly considered in the context of this appeal. Nevertheless, the circuit court allowed Terry to be released to see his physician, and absent Terry's assertions, there is no evidence that his health suffered. For these reasons, we refuse to reverse on this basis.
Affirmed.
Harrison and Klappenbach, JJ., agree.

Balcom v. Crain , 2016 Ark. App. 313, 496 S.W.3d 405.

Id.

Id.

Id.

Id.

Id.

Stehle v. Zimmerebner , 2016 Ark. 290, 497 S.W.3d 188.

Balcom, supra.

Nipper v. Brandon Co. , 262 Ark. 17, 553 S.W.2d 27 (1977).

El Paso Prod. Co. v. Blanchard , 371 Ark. 634, 269 S.W.3d 362 (2007).